MOORE v. JEFFERSON DISTILLING & DENATURING CO.

(May 27, 1929. Opinion and Decree.)
(October 21, 1929. Rehearing Refused.)
(December 3, 1929. Writ of Certiorari and Review Granted by Supreme Court.)
(February 3, 1930. Opinion and Decree by Supreme Court.)

Denegre, Leovy & Chaffe and N. P. Phillips, of New Orleans, attorneys for plaintiff, appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. This suit is brought by Mrs. May B. Moore, as tutrix on behalf of her minor child, Olive May Moore, for damages for the alleged negligent killing of Lucas E. Moore, the late father of the minor and husband of the plaintiff.

From a judgment in favor of defendant, plaintiff has appealed.

The accident occurred on the morning of February 3, 1925, in the yards of the Lucas E. Moore Stave Company, Southport, Jefferson Parish, Louisiana, and was caused by the explosion of a steel drum.

The defendant, Jefferson Distilling and Denaturing Company, sold to a party by the name of Edwin J. Putzell, five hundred unused steel drums. Putzell, before accepting delivery, concluded a sale of the drums to the Marlin Oil Company. The Marlin Oil Company employed Lucas E. Moore Stave Company, of which corporation, the deceased, Lucas E. Moore, was Vice-President, for the purpose of having the drums filled with gasoline and shipped in accordance with its instructions. The Lucas E. Moore Stave Company engaged an expert inspector of petroleum containers, who, with Mr. Putzell, went to the plant of the Jefferson Distilling and Denaturing Company where the drums which were pointed out to them by representatives of the defendant, were inspected and found to be as represented. That is to say, unused. The drums were shipped to the plant of the Lucas E. Moore Company at Southport. When they were being unloaded a sound was heard, as if caused by some gritty substance in the drums. An employee of the Moore Stave Company concluded that the drums had been used and called Mr. Moore's attention to the fact. Mr. Moore then called Mr. Putzell on the phone and Mr. Putzell came to the Moore plant.

In the meantime one of the drums had been opened and it was found to contain a dark, gritty deposit, which, when mixed with gasoline in a test tube, colored the gasoline. Mr. Putzell was advised that the presence of this deposit made the drums unfit as a receptacle for gasoline, because all gasoline is sold as water white in color. Mr. Putzell, believing that some of the drums had been mixed in shipping, examined a number of others and finally, came to one drum, which he insisted was free from any deposit and had not been

used. This drum was brought out from the others, and the bung removed, causing a gaseous vapor to escape. Mr. Moore put his nose to the bung hole as did Mr. Putzell and both looked into the drum. Mr. Moore insisted that he could see a dark substance in the bilge of the drum and Mr. Putzell disagreed with him. Whereupon an employee, who was present, was sent to get an electric torch for the purpose of illumining the interior of the drum. Before the electric torch could be obtained Mr. Putzell suddenly drew a package of paper matches from his pocket, lighted one of them and applied it to the bung hole. A loud explosion was heard and the head of the drum nearest Mr. Moore blew out, striking him with great violence and severely injuring him. He was taken to the Touro Infirmary where he died the next day.

A sample of the deposit in the drums was subsequently taken to a chemist, analyzed and found to be a composite of rust and alcohol residuum.

The defendant is said to have been negligent in that the drums shipped to and delivered to the Moore Plant were not the drums which had been inspected in the warehouse of defendant, but were drums which had been theretofore used as containers for alcohol, which as a result of such use, contained dangerous explosive gases; that defendant shipped into commerce the said drums containing the explosive gases without properly marking or labeling them so as to give warning of the danger involved in handling.

Defendant, in its answer, denied that the drums shipped to the Moore Plant had, as a matter of fact, ever been used before and asserted that they were the same drums which had been inspected at its plant in Harvey, Louisiana. In answering further it averred that the Jefferson Distilling and Denaturing Company had no contractual relations with the decedent, or the corporation by which he was employed; that even if defendant was negligent in shipping used, instead of unused drums, its negligence was not the proximate cause of the accident which was due to the negligence of Putzell, an intervening cause, which had destroyed the causal connection between defendant's negligent act and the injury to deceased; that deceased was guilty of contributory negligence.

We are satisfied from the evidence that the drums shipped to the Moore Company were not the drums which had been inspected in defendant's warehouse in Harvey, Louisiana, but were used drums. How this substitution occurred is not explained but the fact that the drums shipped were not the same, and were not the kind of drums which had been sold is very evident. To ship drums containing explosive and inflammatory gases in place of new or unused drums, whether done, as suggested by counsel for plaintiff, deliberately, or as seems to us more probable, inadvertently, was an act of negligence, for the reasonably expected consequences of which defendant is liable to third persons.

As stated in Cooley on Torts, Third Edition, Page 1486:

"The general rule is that a contractor, manufacturer, vendor or furnisher of an article is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of such article."

This rule admits of exception:

"To the general rule there are various exceptions. One is that a person who

deals with an imminently dangerous article owes a public duty to all to whom it may come, to exercise care in proportion to the peril involved."

"Another exception is that a person who knowingly sells or furnishes an article which by reason of defective construction or otherwise is imminently dangerous to life or property, without notice or warning of the defect or danger, is liable to third parties who suffer therefrom." Ibid. 1488-89.

The leading English authority supporting this rule is Winterbottom v. Wright, 10 Meeson & Welsby, 109, was a case in which the driver of a stage coach, who was injured by the collapse of the coach, brought suit against a contractor who had undertaken by agreement with the postmaster-general to keep the vehicle in repair for the purpose of transporting royal mail over the post road. The plaintiff was denied recovery on the ground that there was no privity of contract between the parties, Lord Abinger, the Chief Baron, saying:

"If the plaintiff can sue, every passenger or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action. Unless we confine the operation of such contracts as this to the parties who enter into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue."

In a very interesting and able opinion by Justice Cordoza, of the Court of Appeals, of New York, in the case of MacPherson v. Buick Motor Car Company, it was held that a manufacturer of an automobile was liable for injuries sustained by one who had purchased the automobile, from a dealer due to the collapse of the automobile on account of a defective wheel, although the wheel which caused the accident was not manufactured by the defendant, but bought from another manufacturer. The Court found that there was evidence that the defect in the wheel, "could have been discovered by reasonable inspection, and that inspection was omitted." In the course of the opinion Justice Cordoza reviews numerous cases and remarks that the earlier cases dealing with the responsibility of the manufacturer and vendor to persons not in privity with him gave the rule a narrow construction, and that the later cases evinced a more liberal spirit. He cited Devlin v. Smith, 89 N. Y., 470, as illustrative of the modern tendency. In that case a contractor who built a scaffold for a painter was held liable for injuries to the painter's employes, due to the defective construction of the scaffold. The opinion also cites the case of Statler v. Ray Manufacturing Co., 195 N. Y. 478, 480, where the manufacturer of a coffee urn was held liable to third persons, injured as a result of the explosion of the urn when heated, because the urn "was of such a character inherently that, when applied to the purposes for which it was designed, it was liable to become a source of great danger to many people if not carefully and properly constructed."

See also Huset v. Case Threshing Machine Co., 120 Fed. 865; Mazetti v. Armour & Co., (Wash.) 135 Pac. 633.

In Buswell's Work, "The Civil Liability for Personal Injuries Arising out of Negligence, (1893)," the author states the rule to be as follows:

"It is a general rule that a person injured by the fault of another, without which fault the injury could not have occurred, is not to be deprived of his remedy because the fault of a stranger, not in privity with him, also contributed to the injury. For the original negligence still remains as a culpable and direct cause of the injury

and the intervening events and agencies which may contribute to it are not to be regarded."

In Eaton v. Boston & Lowell Railroad Company, 11th Allen Reports (Mass.), the court in referring to the defense of intervening cause in a case where a passenger sued in tort for injuries caused by the collision of two trains operated by different railroad companies, after referring to the fact that plaintiff's right of action might have been more manifest if the suit had been brought upon the contract of carriage, said:

"Even if no privity of contract existed and the injury was the result of the joint act of the defendants, the owner of a load of hay (a wagon loaded with hay was stalled on the track and caused the collision) and the Eastern Railroad Company, it would furnish no defense to this action, for in actions of this description, non-joinder of defendants cannot be availed of in bar. And this is true, although the party contributing by his negligence was acting without concert with and entirely independently of the defendants."

In Ruling Case Law, Volume 22, Page 165, it is held that the owner of inherently dangerous commodities, like dynamite and nitroglycerine, is bound to exercise the highest degree of care to prevent injury to the public by explosion. The following illustration is given:

"If, for instance, a railroad company leaves a car of dynamite within a City and at a place prohibited by law, and by the explosion of the car, injury is occasioned, causation is not arrested and the railroad company relieved from liability whether the explosion was occasioned by lightning or by fire, or as has been said obiter, by the act of some wrongdoer making a target of the car for rifle practice."

In Corpus Juris, Volume 45, Page 924, Par. 487, we read:

"Where several causes producing an injury are concurrent and each is an efficient cause without which the injury would not have happened, the injury may be attributed to all or any one of the causes, and recovery may be had against either or all of the responsible persons, although one of them was more culpable, and the duty owed by them to the injured person was not the same. Where the injury results from two or more causes, for all of which defendant is liable, it is immaterial which was the proximate cause."

In Sandel v. State (South Carolina, 115 S. C. 117), 104 S. E. Rep., 569, 13 A. L. R. 1268 it was held;

"The difference between intervening and concurring causes appears to have been overlooked. In operation an intervening cause succeeds or follows that which, for convenience, is called the primary cause, though, as we have seen, it is only the remote cause; but concurring causes operate contemporaneously to produce the injury, so that it would not have happened in the absence of either. If, by the exercise of reasonable foresight and diligence, a concurring cause should have been foreseen and foreguarded, of course liability for it attaches. But the mere fact that one of several concurring causes may not have been reasonably anticipated is not enough to shield from liability him who sets in motion the other: for it is well settled that the negligence complained of need not be the sole cause of the injury. It is enough to show that it is a proximate concurring cause; that is, one that was so efficient is causation that, but for it, the injury would not have occurred. 22 R. C. L. 128."

Mr. Putzell, who had been summoned by defendant, was absent and did not testify, but we find an admission in the record that he would have testified if put upon the stand that "he examined the barrel in question, and, that there was no reason insofar as he could tell from his examination, that it was not perfectly safe to

apply the match." Without this admission, since there is no indication that Mr. Putzell is other than a normal individual, the natural inference would be that he believed his act in applying the match to be perfectly safe. His frame of mind, however, and his belief as to the safety of his act it not the important circumstance. The question is whether he was justified in his attitude, by considerations, which usually determine the action of ordinary individuals exercising ordinary care.

It is said that the fact that a hissing sound was heard and a vapor was seen to arise from the bung hole when the bung was removed, was sufficient to have warned Putzell of the probable consequence of applying a lighted match, and, that his disregard of such warning was such gross negligence, as to be alone responsible for the result. It must be remembered, however, that Putzell h a d bought unused drums, which it is apparent would not explode if a lighted match was applied to the bung hole. More than this, he was present at the plant of defendant when the drums he bought were inspected by an expert and found to be unused and harmless. In determining the character of his act it must be borne in mind that the assurance of defendant coupled with the fact that he had witnessed the examination of the drums, tend to disarm Putzell by causing him to relax such caution as he might otherwise have exercised. His conduct, the day of the accident, indicates that he was thoroughly convinced that the right drums had been shipped and that not even the discovery of sediment in one or two of the drums could remove that impression. If Putzell had been injured by the explosion of the drum, it can hardly be doubted, that he could recover against the present defendant, in the face of a plea of contributory negligence. "A person may rely upon assurances or representations of safety made to him by others, where, under the same or similar circumstances, an ordinarily prudent man would do so." C. J. Verbo Negligence, Vol. 45, Page 956. Besides, escaping air could cause a similar sound.

Putzell's act, in striking the match, was without any knowledge of the danger involved and, therefore, not sufficient to break the causal relation between the negligence of the defendant and the injury of decedent. 45 C. J. 931.

In Cooley on Torts, page 119, we read:

"That if a damage has resulted directly from concurrent wrongful acts or negligence of two persons, each of these acts may be counted on as the wrongful cause, and the parties are responsible either jointly or severally for the injury. It is well settled by adjudged cases, that when an injury is a result of the combined negligence of the defendant and the negligent or wrongful act of the third person for whose act neither the plaintiff nor the defendant is liable, the defendant is liable, when the injury would not have happened without his negligence."

As heretofore observed, where the act of a third person, combined with the original negligent action, caused the injury and the result might reasonably have been anticipated by the first offender, his negligent act is the proximate cause. The fact that one cause may be nearer in time, as, for instance in this case, the application of the match to the bung hole, does not relieve the party guilty of the primary negligence. The intervening cause must be such as to actually supersede the operation of defendant's negligence so that the intervention alone produces the injury.

"An intervening agency in order to supersede the original negligence of defendant as the sole legal cause, must be independent of the latter, and not set in motion thereby, and itself sufficient to produce the injury. Hines vs. Sweeny, 201 P. 164, 28 Wyo. 57." 3rd Decennial Digest, Vol. 21, Verbo Negligence, p. 62.

In Lee vs. Powell Bros. and Sanders, 126 La. 51, 52 Sou. P. 214, it was held:

"The claim of causation by which responsibility is to be fastened upon the defendant company need not be followed beyond the negligence of leaving it in a condition in which it might move at any time from a thousand accidental causes, or perhaps of its own weight, so that its movement might be expected at any moment. So much so, indeed, that we dare say not one of the workmen knowing it to be in that condition would have been willing to venture to stand upon the track, but would have considered that it was as much as his life was worth to do so. One who creates a danger which thus, as it were, hangs by a thread, and may at any time fall, which is bound sooner or later to fall, is responsible for the consequences of its fall. The efficient or juridical cause of the injury in such a case is the creation of this danger.

"For severing the legal connection between the negligence by which such an imminent danger was created and the injury that has resulted from it the intervening voluntary act of some person responsible for his acts would have to be shown. For instance, in the present case, that some one of the workmen, noticing that the lever was unlocked, or insecurely locked, had maliciously pushed it. Nothing of that kind is shown, or even suggested. The mere unintentional or accidental act of a third person would not suffice for breaking the chain of causation.

"Nor when a negligence subsequent to that of the defendant is the agent by which the defendant's negligence proves injurious can the subsequent negligence be a bar to the plaintiff's recovery if such subsequent negligence was likely, in the usual and natural order of things, to follow from the defendant's negligence."

Wharton, Negligence (2d) par. 145.

In Palmetto Insurace Co. vs. Clarke's Garage, 6 La. App. 420, a case confidently relied upon by defendant, this court held that the proprietor of a garage was not liable for damages to a customer's automobile caused by a fire due to a bystander throwing a lighted match into some gasoline, which had been spilled by an employee, because the throwing of the match was the proximate cause of the resulting damage. In the case at bar the proximate cause was the shipment of used drums, with explosive gases, representing them as unused and free from any dangerous contents. If in the Palmetto Insurance Company case the defendant's employee had informed the match thrower that the gasoline was water, the cases would be more similar in principle.

The defendant is a distiller of alcohol and uses drums of the size and character, which caused the accident, for storing its product. It knew the effect of alcohol upon the drums, and of the explosive and inflammatory gases, which remain after the removal of the alcohol. It should have taken extraordinary care to have shipped the unused drums, which it sold, and which were free from dangerous gases and safe for all uses. It might reasonably have contemplated that the drums would explode and cause injury to someone as a result of its error, if not by reason of a lighted match, in some other way.

Decedent is said to have contributed to his injury by his negligence in remaining on the scene after Putzell took the paper of matches from his pocket. It is said he

should have run away. The evidence is that Putzell acted with great haste and "in a flash" and we are convinced no opportunity was afforded plaintiff to run even had he divined Putzell's purpose in taking the matches from his pocket. It is certainly as reasonable to suppose that Putzell intended to light a cigarette as that he would apply the match to the bung hole, consequently it was not easy to surmise what he intended to do with the lighted match.

The minor, Olive May Moore, on whose behalf this suit is prosecuted, at the time of her father's death, February 3, 1925, was 13 years old. The deceased was Vice-President of the Lucas E. Moore Stave Company and as such, at the time of the accident, was receiving a salary of $10,500 per year. He was 41 years old and had a life expectancy of 27.45 years. Under the jurisprudence of Louisiana, in cases of this character, large awards have not been countenanced. We believe that $10,000, under the circumstances, would be proper.

Since this suit was instituted the widow, Mrs. Olive May Moore has remarried, her husband being James Hennen Legendre.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that Mrs. Olive May Moore Legendre, tutrix of the minor Olive May Moore, do have and recover judgment against the defendant, Jefferson Distilling and Denaturing Company, in the full sum of $10,000 with legal interest thereon from judicial demand and all costs.