## Boak *v.* Kuder, Appellant.

Argued October 3, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

 

*Rufus S. Marriner,* with him *John F. Wiley,* of *Marriner & Wiley,* for appellant.

*George I. Bloom,* of *Bloom & Bloom,* for appellee.

OPINION BY MR. JUSTICE MAXEY, November 27, 1939:

Plaintiff, a garage proprietor, brought an action in trespass against defendant to recover damages for substantial injuries to his back which he sustained when the trunk lid of defendant's sedan fell on him just after he had crawled into the back of the luggage compartment to remove a dangling chain. In his statement of claim he alleges, inter alia, that the "braces or hinges on each side of the upper part of the door to the luggage compartment had been for some time, so carelessly, recklessly and negligently maintained that they had become defective and permitted the door to suddenly and without any warning fall upon the plaintiff herein." The negligence alleged was defendant's failure "to maintain the door to the luggage compartment . . . in a proper state of repair," and "to give warning to the plaintiff of the defective condition when he knew of" it.

The jury returned a verdict in favor of the plaintiff in the amount of $11,140.00. Defendant's motions for judgment n. o. v. and for a new trial were refused and judgment was entered for plaintiff. This appeal followed.

Appellant, defendant below, contends, inter alia, that plaintiff failed to make out a prima facie case against him and that plaintiff was guilty of contributory negligence.

Plaintiff, aged 45, testified that on August 17, 1937, after defendant's car had been greased and oiled, and while he was putting air in the tires, he noticed a chain hanging down in the back of the luggage compartment, that he asked defendant if he wanted the chain taken out and upon receiving an affirmative answer, he "lifted the lid up as far as it would go" and took his "left hand and pushed the catch in as far as it would go." The compartment has a bottom space for the spare tire and an upper space for luggage. The plaintiff crawled in under the bottom space, and, as he says, "the trunk lid came down" across the lower portion of his back in the lumbar region, and that, at the time, he (defendant) was standing to the "right and facing the rear end of the car, five or six feet" away. He testified further that defendant visited him at the hospital a day or two after the accident and told him "it was his [defendant's] fault, and he knew it [the lid] had dropped down several times before, and he could have prevented it, if so minded, . . . he could have got there in time to do it if he just thought, but he was busy talking to a party there, and he wasn't paying a whole lot attention to what I was doing."

The doctor who was called to the garage to attend the plaintiff, testified that while there defendant stated that "that catch on the lid of the rear compartment let go and struck the patient in the small of the back, the patient slumped into unconsciousness and slid out onto the ground," and that defendant subsequently stated that "he was sorry that he didn't think to warn him [plaintiff] of the bad catch, and that he had had trouble with this on several occasions before at home."

Plaintiff's brother, U. Grant Boak, testified that after the accident defendant told him that "he knew that the catch on it [the lid] was defective, and he felt a certain amount of responsibility due to the fact that he had not warned Earl [the plaintiff]; and further-

more, since he was standing so closely to the back end of the car, he could have easily held the lid up himself."

After the accident defendant had the hinge "removed from his car" and there was testimony by automobile mechanics to the effect that there was no defect in the hinge and that when the hinge is pushed back in position to lock it, the weight of the trunk will hold it.

Defendant was asked on direct examination: "What did you tell him [plaintiff] about the hinge?" He answered: "I told him that I knew that the lid of that trunk would fall because the hinge was defective." He then explained what he meant by "defective," as follows: "That if it [the hinge] was not properly adjusted, pushed back after the lid was raised, it would not support the lid if the car was moved." He also said that "the lid had fallen on me several times" when "I did not push the hinge back into the proper position." He explained the statement which plaintiff testified he (defendant) had made to him in the hospital, as follows: "I told him [plaintiff] how much I regretted the accident, how sorry I was that it happened, and how sorry I was that my car was involved in any accident that hurt him."

Appellant asks: "What legal liability under the circumstances was upon the defendant?" In answer to that query we call attention to what we said in *Ebbert et al. v. Phila. Electric Co.*, 330 Pa. 257, 269, 198 A. 323, as follows: "One duty imposed by law is to use due diligence to avoid causing harm which an individual has no legal right to inflict upon another. This duty is breached by any legally harmful act or omission which might have been foreseen and avoided, especially when the person injured is one for whose safety and protection the defendant was at the time under some special obligation to act with due foresight. Holmes in The Common Law, page 145, says: 'Most liabilities in tort . . . are founded on the infliction of harm which the defendant had a reasonable opportunity to avoid at

the time of the acts or omissions which were its proximate cause.' " In *Bisson v. Kelly,* 314 Pa. 99, 110, 170 A. 139, we said: "It is a primary *social* duty of every person to take thought and have a care lest his action result in injuries to others. This social duty *the law* recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable."

Do the facts of this case make the above principles applicable? Appellant earnestly contends as follows: "There is not one iota of evidence on the part of the plaintiff to show that either the hinges, the door to the luggage compartment, the lid as we call it or the trunk lid, had any defect in them, or was out of repair in the slightest way whatsoever. . . . This catch is the only thing that is talked about in this case, no other hinge, no other part of the door, no other part of the equipment involved in any wise in plaintiff's claim." Counsel explains defendant's admissions as follows: "The defendant who was a friend of the plaintiff regretted the accident, thought there was some way in which he could have prevented it, had he been near enough, for instance, to hold up the top, the plaintiff might as well requested him to hold it up had the plaintiff thought there was any danger, or as a precaution to his going into this place where a lid might fall. . . . Each individual who is human, wishes after an accident occurred he had done something which may have prevented it."

The fact must be recognized that plaintiff's case would be much stronger had there been direct proof in support of his claim. However, a litigant is not limited to direct proof when he is seeking to support his allegations. Circumstantial evidence is legal evidence and as Chief Justice GIBSON said in *Com. v. Harman,* 4 Pa. 269, 273: "All evidence is more or less circumstantial, the difference being only in the degree; and it is sufficient for the purpose when it excludes disbelief; that is, actual,

and not technical disbelief; for he who is to pass on the question, is not at liberty to disbelieve as a juror while he believes as a man."

In the instant case the plaintiff was injured by the falling of the door or lid which he had lifted for a proper purpose. Since he was a garage repairman acquainted with the work he was doing, it is a fair inference that he lifted this door or lid as he had in the course of his work doubtless lifted many others. That it fell upon him supports an inference that there was something wrong with the holding mechanism. We said in *Pope v. Reading Co.*, 304 Pa. 326, 331, 156 A. 106: "While the doctrine of res ipsa loquitur does not . . . apply to cases in which a plaintiff is injured by a falling body, the negligent acts of omission by a defendant in such cases may be shown by establishing facts and circumstances from which his negligence may be legitimately inferred. It is not a case of presuming negligence from the mere happening of an accident, but it is a case of inferring negligence from the circumstances from which the accident apparently arises. . . . At common law it was held that every man must have some knowledge 'of the quality of his beast' (1 Hale P. C. 430) and use appropriate means to keep that beast from harming people. Public welfare requires that this same salutary rule apply to the inanimate objects in a man's possession and subject to his intelligent control." In the case at bar we have not only the fact of the falling door or lid but we also have admissions by the defendant which, in spite of the explanations of them by him and his counsel, might legitimately be interpreted by the jury as meaning that the hinge or the catch or some other essential part of that lid was defective and that the defendant well knew of the defect and forgot to mention that fact to the plaintiff before the latter put himself in the necessary performance of his assigned work, in a dangerous position in respect to it should it, after being raised, suddenly fall. Defendant's conduct, after

realizing that plaintiff had been injured by the falling lid, was commendably frank, but in his frankness he furnished a circumstance from which the jury could find proof in support of plaintiff's allegation of defectiveness in the lid's mechanism. Wigmore, in Vol. 2 of his 2nd edition of Evidence, sec. 1052, speaks of "various sorts of conduct, which indicate a guilty consciousness and are undoubtedly receivable in evidence, are sometimes spoken of as Admissions. The truth is that they are just what they seem to be, namely, acts, not assertions, and that their use in evidence is strictly a circumstantial one by way of inference from the conduct to the mental state beneath it, and from that to some ulterior fact."

The judgment is affirmed.