**ELIZABETH ARDEN, Inc., et al. v. BROWN et al.**

**No. 7151.**

Circuit Court of Appeals, Third Circuit.

Nov. 28, 1939.

A. Evans Kephart, of Philadelphia, Pa., Harvey H. Steckel, of Allentown, Pa., and Robert T. McCracken, of Philadelphia, Pa. (Butz, Steckel & Rupp, of Allentown, Pa., and Montgomery & McCracken, of Phila-delphia, Pa., of counsel), for appellant, Leh & Co.

Harry R. Axelroth, of Philadelphia, Pa. (Axelroth & Porteous, of Philadelphia, Pa., of counsel), for appellant Elizabeth Arden, Inc.

George H. Detweiler, of Philadelphia, Pa., for appellees.

Before BIDDLE, JONES, and BUF-FINGTON, Circuit Judges.

BIDDLE, Circuit Judge.

This suit involves the liability of both a manufacturer and a store for the sale of a toilet preparation.

On June 9, 1936, Ruth R. Brown, the appellee, asked the sales girl at the cosmetic counter of H. Leh & Co., a department store in Allentown, Pennsylvania, for some suntan oil. She was given a bottle of Elizabeth Arden's "Ardena Bronze," and was told that it was suntan oil, although the accompanying label which the appellee read described not an oil but a "tan coloring". The appellee applied Ardena to her abdomen and back, because she "wanted to wear a halter neck bathing suit during the summer", and exposed herself to the sun. Later she was startled to see purple coloring matter running in the shower bath. Her skin turned purple. In September 1936, after she had received some treatment from a New York dermatologist she consulted her family physician, Dr. Clement S. Wilson, in Maine. At the trial Dr. Wilson testified she was suffering from an impairment of the kidneys which he feared would be permanent, resulting from anilin dye poisoning from the use of Ardena. Verdicts were found for appellee and her husband. The defendants moved for judgment and for a new trial, which motions the District Court denied.

We shall deal first with the liability of Leh & Co., the retailer. Ardena Bronze is distributed by Elizabeth Arden throughout the country in great quantities and sold by many stores, including Leh & Co. There is no evidence that its use had ever before caused any injuries, so that there is nothing that would have suggested to Leh & Co. that it should not recommend this particular toilet preparation. The product was widely advertised and used. The case is governed, therefore, by the law laid down in West v. Emanuel, 198 Pa. 180, 181, 47 A. 965, 53 L.R.A. 329. Edna West purchased a "Kohler's Headache Powder", and

five hours later died, apparently from the effect of the powder. The Supreme Court of Pennsylvania affirmed a judgment of nonsuit, saying: "The Kohler headache powders were in demand at least 12 or 15 years ago, and from that time on they were to be found for sale in most, if not all, of the principal drug stores. They were recognized and regarded as an efficient and proper remedy for headaches, and were mainly used to relieve them. * * * In the sales of patent or proprietary medicines furnished by the compounder of the ingredients which compose them the druggist is not required to analyze the contents of each bottle or package he receives. If he delivers to the consumer the article called for with the label of the proprietary or patentee upon it, he cannot be justly charged with negligence in so doing."

■ This is what occurred here, and we do not regard as significant the fact that this purchaser was given a liquid preparation for providing a tan color when she had asked for a suntan oil, since the claim is that the preparation had injurious effects when applied to the skin. Nor is there evidence as to how long Ardena had been generally sold, but the principle applies—a retailer is not responsible for the harmful effects of a patent medicine he did not prepare.

In distinguishing the *West* case from a case in which injuries were caused by a defective electric washing machine the Supreme Court of Pennsylvania last year reaffirmed the principle that a druggist is "not required to analyze the contents of each bottle or package he receives. It would, for example, be utterly impracticable and unreasonable to require grocers to open and analyze the contents of every can of food they sell. *The purchaser in such cases does not expect any such precaution to be taken* [the emphasis is the court's] and re-

lies wholly upon the integrity, good faith, and care of the person who put up the food in the cans. The rule of nonliability of vendors in 'original package' cases is firmly established in the law." Ebbert v. Philadelphia Electric Co., 330 Pa. 257, 264,[1] 198 A. 323, 327.

■ Since we have held that no liability attaches to Leh & Co., the verdict being joint, we must grant a new trial unless we are also of the opinion that the evidence did not establish liability on the part of the other defendant, Elizabeth Arden, Inc. Clearly the evidence must show that the injuries on which the verdict was based were caused by the use of the defective toilet preparation. Dr. Wilson testified for the appellee that her condition was caused by the use of an anilin dye which he referred to as the "brown element". This he later described as "Bismarck" brown. "I believe there is a considerable quantity of Bismarck brown in that preparation. I believe that is what did the damage." He based his opinion that Bismarck brown was in the preparation from a chemist's analysis about which he had been informed, and not on any evidence introduced into the record. "I was told the basis of the coloring matter in this preparation she put on was an anilin derivative, namely, Bismarck brown." As a matter of fact counsel stipulated on the record an anlysis of Ardena Bronze and this analysis did not contain Bismarck brown. A witness for Arden testified that the dyes shown in the stipulation are certified by the U. S. Department of Agriculture as being suitable for use in foods for human consumption.

In Tremaine v. H. K. Mulford Company, 317 Pa. 97, 176 A. 212, the action was based on a death alleged to have resulted from a rabies vaccine destructive to human life. The Supreme Court of Pennsylvania held that the plaintiff had not established a case

---

[1] The court finds support for this principle in the Restatement of the Law of Torts, 2 A.L.I. 1088, § 401. The comment under that section is as follows: "a. *Sales at retail.* Goods bought of retail or wholesale dealers in their original packages and labelled as the product of the manufacturer are usually bought in reliance upon the manufacturer's competence and care. This is always the case where a purchaser asks for a particular brand. Therefore the retailer is not subject to liability for bodily harm caused by their defective condition, unless the condition is such that even the cursory inspection which a dealer should make of any article, which he puts in stock and sells, would disclose some indication that the goods had deteriorated to a dangerous extent. On the other hand, if the purchaser depends upon the recommendation of the retailer, he is entitled to expect that the retailer will know something of the manufacturer of the goods he sells and will not recommend goods made by a manufacturer whom the retailer, by reputation or previous experience with his products, should know to be careless or incompetent."

merely by showing that death followed closely upon the use of the serum. The plaintiff must show, said the court, that the death was caused by the serum, and that the serum itself was unsafe. The plaintiff in our case fails in both these tests. She proved not that Ardena Bronze containing stipulated ingredients was harmful or caused injuries, but that an anilin dye, not in the case, was injurious.

The judgment in favor of the plaintiffs is accordingly reversed, and the District Court is directed to enter judgments in favor of both these appellants.