## CHARLES LACHMAN CO., Inc. v. HERCULES POWDER CO., Inc.
### Civ. No. 8013.

District Court, E. D. Pennsylvania.
May 20, 1948.

F. Raymond Wadlinger (of Foulkrod, Porter & Wadlinger), of Philadelphia, Pa., for plaintiff.

Bernard Eskin (of Wolf, Block, Schorr & Solis-Cohen), all of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

The defendant manufactures and sells a chemical compound called Dresinol 42 to be used with starch in making sizing for carpets. The plaintiff manufactures and sells carpets.

Between June 3, 1946, and July 18, 1946, the plaintiff bought a quantity of Dresinol 42 from the defendant and used it in making carpet.

A quantity of carpet so manufactured was sold by the plaintiff to Heisler & Co. who in turn sold it to Butler Brothers in St. Louis, Missouri. On arrival at St. Louis it was discovered that a good deal of the carpet in the interior of the rolls was charred and burned, the charring being due to a combustible ingredient in Dresinol 42 which had a spontaneous ignition hazard.

The plaintiff, alleging that by reason of the facts stated above it had incurred liability to Heisler in the amount of $3,870.69 and expenses of its own in the amount of $513.81, brought this suit.

The defendant has moved for summary judgment, submitting an affidavit which merely sets forth in full the contracts under which the plaintiff purchased the material in question. There is no dispute about these and the case is the same as though the plaintiff had incorporated them into the complaint, and the defendant had moved to dismiss for failure to state a claim upon which relief can be granted.

The claim is not for breach of warranty. There is no express warranty and the terms of the contract negative any implied one. If the plaintiff can recover at all it can only be on the ground of negligence.

There is no doubt that the complaint sets forth actionable negligence. The only question is whether the defendant could and did by its contract relieve itself of liability for negligence to this particular buyer.

The important part of the contract is the following:

"3. Seller makes no warranty of any kind, express or implied, except that the

materials sold hereunder shall be of Seller's standard quality, and Buyer assumes all risk and liability whatsoever resulting from the use of such materials, whether used singly or in combination with other substances. * * * Seller neither assumes nor authorizes any person to assume for it any other liability in connection with the sale or use of the materials sold hereunder, and there are no oral agreements or warranties collateral to or affecting this Agreement."

The general rule is that one party to a transaction may ordinarily contract to limit or eliminate his liability for negligence in performing his obligations. There is no rule of public policy which makes such provisions ineffective, particularly when the obligee is under no disadvantage by reason of confidential relationship, disability, inexperience or the necessities of the situation. In the present case the parties were both corporations engaged in large scale manufacturing. The plaintiff was under no compulsion to buy from the defendant and, if it desired to buy from it, had the choice of accepting the defendant's terms or going elsewhere.

The plaintiff stresses the inherently dangerous character of the compound by reason of its tendency to ignite spontaneously. Of course, there is a duty upon the manufacturer of an inherently dangerous substance to exercise all reasonable care. It must be conceded for the purposes of this discussion that such duty existed and that the defendant failed to discharge it. The question remains whether the parties in this case could and did relieve the defendant of all liability for such failure. Upon that question the attempt to distinguish between the substances inherently dangerous and those having no such qualities is "of little practical use." Ebbert v. Phila. Electric Co., 330 Pa. 257, 262, 198 A. 323, 326. The phrase is an illusory one at best and, as Justice Maxey pointed out in the case cited, "the futility of invoking this phrase in the adjudication of cases becomes increasingly apparent." Especially is this true in the present case. It may be that a substance which has a tendency to ignite spontaneously can properly be described as "inherently dangerous" but the element of danger or peril involved in its use has no bearing upon the legal situation in the present case. It might have been important had the material caused a conflagration or loss of life or personal injury; on that point no opinion need be expressed. The plaintiff's cause of action in the present case is simply that the defendant sold him something which, when used, ruined his carpets. His position is no different than if the compound had made them unsalable by developing a bad smell or by rotting them or by bleaching out colors.

If I am correct in concluding that the parties could legally contract to relieve the defendant of liability for the damage which occurred, the only question left is whether they did so, and I am of the opinion that they did. It would be hard to devise a more general or inclusive provision than "Buyer assumes all risk and liability whatsoever resulting from the use of such materials." I find myself unable to accept the plaintiff's argument that "The risks which a reasonable mind would think of would be risks that the sizing made with the Dresinol 42 would not be satisfactory." Those risks were already fully eliminated by the first clause of the sentence that "Seller makes no warranty of any kind, express or implied, except that the materials sold hereunder shall be of Seller's standard quality." Having said this it was unnecessary to say more unless the parties meant more. In determining what the parties intended to accomplish by the contract, the situation of the defendant as well as that of the plaintiff must be borne in mind. It can be well understood why a manufacturer of chemicals would want to guard against liability arising from any and every use to which its products might be put and inserted the clause in question for that purpose. If the parties had diverse ideas as to what the term meant it must be given its ordinary meaning and "all risk and liability whatsoever" must be taken to mean what it says.

In the foregoing, the following facts, contained expressly or by necessary implication in the complaint, have not been overlooked but have been assumed to exist:

208

(1) That the defendant knew that the plaintiff intended to use Dresinol 42 to make sizing for its carpets.

(2) That the defendant could have discovered by the same tests, which were made after the event, that the material had a spontaneous ignition hazard. It does not appear, however, that the defendant actually knew of this quality. On the contrary, it appears that "Dresinate 42" which the plaintiff avers is the same thing as "Dresinol 42" had been used by the plaintiff before apparently without mishap.

(3) It is also assumed that certain agents or representatives of the defendant informed the plaintiff as much as two years before the sale in question that Dresinate 42 was suitable to be used with starch for back-sizing carpeting. In this connection, however, it is to be noted that the contract provides that "there are no oral agreements or warranties collateral to or affecting this Agreement."

I do not think that the defendant's point, to the effect that the plaintiff cannot recover because it has not actually paid and discharged its liability to its purchaser, is well taken, although in view of the conclusion reached above, it is unnecessary to decide that point.

Judgment may be entered for the defendant.