## Bollin *v.* Elevator Construction & Repair Co., Inc., Appellant, et al.

8

Argued November 11, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Peter P. Liebert, 3rd,* with him *John J. McDevitt, 3rd,* for appellant.

*Daniel J. McCauley, Jr.,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 3, 1949:

This is an action in trespass brought by plaintiff against the Elevator Construction and Repair Company, Inc. (hereinafter called the Elevator Company), to recover for personal injuries sustained when an elevator he was operating in the building of his employer, Pennsylvania Warehousing and Safe Deposit Company of Philadelphia (hereinafter called the Pennsylvania Company), fell in its shaft. Plaintiff's complaint alleges that prior to the accident the Pennsylvania Company had contracted with the Elevator Company to repair the warehouse elevator and "restore it to proper and safe operating condition" and that the accident was due to the Elevator Company's negligence in making the repairs.

The Elevator Company joined the Pennsylvania Company and the Globe Indemnity Company (hereinafter called the Indemnity Company) as additional defendants. In its complaint against the Indemnity Company, the Elevator Company alleged that the "additional defendant Globe Indemnity Company did insure additional defendant Pennsylvania Warehousing & Safe Deposit Company of Philadelphia against loss from elevator accidents, and as such insurer, in accordance with the Act of May 2, 1929, P. L. 1518, as amended, of the Commonwealth of Pennsylvania, additional defendant, Globe Indemnity Company, did undertake to make periodic inspections of the said elevator of additional defendant Pennsylvania Warehousing & Safe Deposit Company of Philadelphia at its warehouse located at 16th and Callowhill Streets, Philadelphia."

It further averred that the alleged accident was due to the negligence of additional defendant Globe Indemnity Company . . . in that (a) it "failed to make careful and proper inspections of said elevator;" (b) it "failed to give notice and warning of the unsafe and defective condition of said elevator;" (c) it "permitted

the elevator to be operated and continued in use while in a state of disrepair and defective condition;" (d) "the employees of additional defendant inspecting said elevator were unqualified and incompetent to make such inspections;" (e) it "violated the laws of the Commonwealth of Pennsylvania and the laws and ordinances of the City and County of Philadelphia relating to elevator inspections;" (f) it "was otherwise careless and negligent."

In its preliminary objection the Indemnity Company says, inter alia: "The plaintiff's action being in trespass, as aforesaid, for damages resulting from the negligence of the original defendant, said Globe Indemnity Company cannot be joined therein as an additional defendant upon the basis of any alleged liability under a policy of insurance or any other contract."

These preliminary objections were sustained by the court below. This appeal followed.

The Act of May 2, 1929, P. L. 1518, 35 PS 1341 et seq. provides: "If an elevator is insured by a company authorized to insure elevators in this Commonwealth against loss from accident, the inspection may be made by an employe of such company, . . . Every inspector shall forward to the department a full report of each and every inspection made of any elevator, showing the exact condition of the said elevator. If this report indicates that the said elevator is in a safe condition to be operated, the department shall issue a certificate of operation . . . No elevator may be lawfully operated without having such a certificate conspicuously posted in the elevator car, cage or platform, or adjacent to one of the entrances to such elevator."

Appellant contends that under this Act a duty is owed by an insurance company inspecting machinery to members of the public. Apparently this case is in this state sui generis. We find no other case in Pennsylvania like it. In *Anderson v. London Guarantee & Accident Company*, 295 Pa. 368, 145 A. 431, the question aris-

ing in the instant case was not decided, but there is some dictum that is apposite. In that case the defendant insurance company inspected a steam boiler to determine whether or not it should insure the boiler owner.* The boiler exploded killing an employe at work some distance from the boiler. At the time the boiler had not been accepted by the purchaser. A few days preceding the accident the work on it was completed. The owner of the plant applied to a casualty company for insurance. The company sent an agent to pass upon the efficiency of the completed boiler. While the examination was taking place, an explosion occurred. This Court said: "The duty of Simpkins [the casualty company's employe] was to find if the contractor had installed a machine which would withstand the resistance for which it was designed. When he arrived, the boiler was in the control of the manufacturer; and the openings had already been closed, with the alleged defective flange, and tightly fastened. The directions given by him were to the employees of Badenhausen to start the test, to learn whether the work contracted for was properly completed, so as to justify the making of an insurance contract, and nothing more." This Court further said: "One controlling the operation of a boiler is bound to make reasonable inspection to guard against explosions which may cause injury to his own employees, or even third parties. So, the manufacturer is liable where damage is suffered as a result of his negligence (Erie City Iron Works v. Barber & Co., 102 Pa. 156;

---

* Section 19 of the Act of July 12, 1919, P. L. 924 amending the Act of May 2, 1905, P. L. 352, provides, inter alia: "All boilers used for generating steam or heat in any establishment shall be kept in good order, and the owner, agent or lessee of such establishment shall have said boilers inspected, by a casualty company in which said boilers are insured, or by any other competent person approved by the Chief Factory Inspector, once in twelve months. and shall file a certificate showing the result thereof, in the office of such establishment, and shall send a duplicate thereof to the Department of Factory Inspection."

Losee v. Clute, 51 N. Y. 494), or the owner may be when he has accepted it, and thereafter fails to make reasonable inspection to discover defects (McNeil & Brother Co. v. Crucible Steel Co., 207 Pa. 493), and this responsibility may be enforced against an insuring company: Van Winkle v. American Steam Boiler Co., 52 N. J. L. 240, 19 Atl. 472. . . . It (defendant) had not entered into an insurance contract or assumed responsibility to make proper inspections for the protection of itself and owner, and therefore cannot be held responsible for the negligence claimed to have caused the injury." Later in the opinion the court stated that: "Where the duty of inspection has been imposed, and there is proven a failure to exercise due care, which may be inferred from the circumstances . . . liability attaches."

The question for us to decide in the case now under review is this: what is the legal liability of an insurance company by reason of its having assumed on behalf of the owner to discharge the statutory liability of inspecting and reporting on the condition of the elevator, not within the terms of its contract, but under and pursuant to the terms of a statute?

Such questions have been decided in other jurisdictions. In *Van Winkle v. American Steam Boiler Co.,* 52 N. J. L. 240, 19 Atl. 472, plaintiff was injured by the explosion of a steam boiler which had been insured by the defendant insurance company. Although not required to do so by New Jersey law, the defendant insurance company had agreed as a matter of contract to inspect the boiler for the owner at periodic intervals and warn the owner of any defects found. In construing the policy the court said: that it was plain that the defendant company was in nowise obligated by its contract to make any inspections whatever; it acquired the right to do so when it chose to do so, and if it had altogether refrained from making an inspection, it would seem clear that it would have incurred no responsibility either to the assured or to the plaintiff. But the defend-

ant having, in the exercise of its volition, made repeated inspections of the boiler and furnished the required certificates, no one could doubt that, by this course of action, a duty was imposed on it, by operation of the contract itself, to act with ordinary care and skill, both with respect to its inspection and its certificate and that there could be no room to doubt that, for the proximate damages occasioned by the absence of such care and skill, the defendant would be answerable to the assured under the contract. The court further said, in regard to the plaintiff who was a stranger to the contract, that there was a broader ground on which the case could be based. It was that, in all cases in which any person undertakes the performance of any act which, if not done with care and skill, will be highly dangerous to the safety of persons, known or unknown, the law, ipso facto, imposes as a public duty the obligation to exercise such care and skill.

This case is cited with approval in *Sheridan v. Aetna Casualty & Surety Co.*, 3 Wash. (2d) 423, 100 P(2d) 1024, in which the facts were similar to the facts in the instant case. Plaintiff had fallen into an elevator shaft. When he entered the ground floor of the building the elevator door was open and he stepped into the shaft. He brought suit against the owners of the building. The owner died and plaintiff filed an amended complaint in which he named as additional defendants the Moline Elevator Company, under contract with the owners of the building for servicing the elevator, and the Aetna Casualty Surety Company, which carried a liability policy on the elevator at the time of the accident. There was a city ordinance which required the owner to make a report to the city re the condition of the elevator and the insurance company made that report for the owner as a matter of service under the policy; there was no provision in the policy that required it. The evidence showed that the insurance company made quarterly inspections of the elevator for a period of a year and a

half preceding the accident. The jury brought in a verdict in favor of the plaintiff against the Aetna Casualty & Surety Company. The company appealed assigning as grounds for the appeal (a) that plaintiff had no rights under the policy, (b) that the company was not liable to the plaintiff because of its inspections, (c) that the city ordinance requiring inspections did not establish any basis for recovery against defendant, (d) that there was no causal connection between the inspections and the plaintiff's injuries. In ruling on these assignments the court said: "Our conclusion is that the respondent's action is maintainable, not in virtue of any obligation imposed by the policy of insurance, but because of the legal responsibility attaching to its voluntary assumption, as the owner's agent, of the duty of proper inspection and reporting to the city . . . The ordinance required the quarterly inspection of the elevator and the filing of a report with the city by a competent inspector, who might be a regularly authorized inspector of a liability insurance company in good standing in the state, or an employee or representative of some responsible firm in the business of elevator construction and maintenance satisfactory to the superintendent of buildings of the city . . . The appellant assumed the performance of this duty in accordance with the terms of the ordinance. Having assumed the duty of inspection and reporting to the city, the appellant would be liable at common law to any one sustaining damages by reason of its neglect, the measure of its duty, in respect to inspection and reporting, being fixed by the ordinance."

The court adds: "The purpose of the ordinance was, of course, to protect the public against injury, and, to this end, inspection was required, on the assumption, necessarily, that proper inspection and reports of existing conditions to the city would tend to eliminate, or at least lessen, the chances of accident and injury. The jury could have found, under the evidence, as it did find, that the elevator door was frequently out of repair and

was not adequate for its intended use. The reports made to the city by the appellant's inspector were uniformly, during the period covered by the evidence, that the elevator was in proper order, thereby assuring the city authorities that they need not concern themselves with its safety . . . Its reports might well be found by the jury to have lulled the building department of the city into a sense of security, in respect to the elevator, and that the reports were causes contributing proximately to respondent's injury."

In *Lough v. John Davis & Co.*, 30 Wash. 204, 70 P. 491, the court said: "It is not his contract with the principal which exposes him to or protects him from liability to third persons, but his common law obligation to so use that which he controls as not to injure another. That obligation is neither increased nor diminished by his entrance upon the duties of agency, nor can its breach be excused by the plea that his principal is chargeable. . . . If the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts."

In *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, 111 N. E. 1050, defendant, a manufacturer of automobiles, sold an automobile to a retail dealer, who in turn resold the car to the plaintiff. When the plaintiff was in the car it suddenly collapsed and plaintiff was thrown out and injured. The accident was due to the defective wood in one of the wheels. The wheel was not made by the defendant; it was bought from another manufacturer. Judge Cardozo, speaking for the New York Court of Appeals, said: "Its defects could have been discovered by reasonable inspection, and that inspection was omitted . . . The question to be determined is whether the defendant owed a duty of care and vigilance to any one but the immediate purchaser. The foundations of this branch of the law, at least in this state, were laid in Thomas v.

Winchester (6 N. Y. 397 [57 Am. Dec. 455]). . . . [In that case] the sale was made to a druggist, who in turn sold to a customer. The customer recovered damages from the seller who affixed the label. 'The defendant's negligence,' it was said, 'put human life in imminent danger.' . . . Cases were cited by way of illustration in which manufacturers were not subject to any duty irrespective of contract. . . . Thomas v. Winchester became quickly a landmark of the law. In the application of its principle there may, at times, have been uncertainty or even error. There has never in this state been doubt or disavowal of the principle itself." Judge CARDOZO cited the cases of *Devlin v. Smith,* 89 N. Y. 470, 42 Am. Rep. 311, where "the defendant, a contractor, built a scaffold for a painter. The painter's servants were injured. The contractor was held liable. . . . He knew that it was to be used by the workmen. . . . Building it for their use, he owed them a duty, irrespective of his contract with their master, to build it with care."

Judge CARDOZO also cited the case of *Heaven v. Pender,* 11 Q.B.D. 503, and after quoting literally from Lord Esher's opinion, added this: "He [Lord Esher] then points out that for a neglect of such ordinary care or skill whereby injury happens, the appropriate remedy is an action for negligence. The right to enforce this liability is not to be confined to the immediate buyer . . . for whose use the thing is supplied."

Judge CARDOZO then says: "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully." He cites the following example: "If A leases a building

to be used by the lessee at once as a place of public entertainment . . . injury to persons other than the lessee is to be foreseen, and foresight of the consequences involves the creation of a duty. (Junkermann v. Tilyou R. Co., 213 N. Y. 404 [108 N. E. 190, L.R.A. 1915F, 700] and cases there cited)." He says: "The presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law."

We think the foregoing reasoning of Judge CARDOZO applies to the instant case. When the insurance company failed to perform the duty the additional defendant, the Pennsylvania Warehousing and Safe Deposit Company of Philadelphia, claims it "did undertake", to wit, "to make periodic inspections of the said elevator of" the company just named, it should reasonably have foreseen that a natural result of this neglect of the duty so allegedly undertaken would be injurious not only to the other party to the contract, but also to persons lawfully using that elevator. Persons lawfully using elevators have a right to assume that the elevators are periodically inspected as the law requires them to be and that, therefore, if an elevator is available and offered for use, the inspection it had been subject to must have determined the fact that it is in safe condition for use. If the Indemnity Company, because of its contract with the Pennsylvania Company, assumed the duty of undertaking to make these periodic inspections in both the company's and the public's interest, and if it did not do so, and if any person was injured because the elevator was in a condition so unsafe that reasonable inspection of the elevator would have disclosed that fact, the responsibility, either sole, joint or several, as may ultimately be determined, of the Indemnity Company for the damage resulting to the plaintiff from the unsafe condition of

the elevator, is clear. The source of this obligation is not only the contract between the Pennsylvania Company and the Indemnity Company; it finds "its source" also "in the law".

What we said in *Ebbert v. Philadelphia Electric Company*, 330 Pa. 257, 269, 198 A. 323, is applicable here, to wit: "The test to determine whether there is liability in an action of tort is in the answer to the question whether the defendant by an act or omission injured another by disregarding a duty imposed by law in respect to that other."

The judgment is reversed. The record is remitted for further proceedings in accordance with this opinion.