Edward Aaron MAYS

v.

LIBERTY MUTUAL INSURANCE COMPANY.

Edward Aaron MAYS

v.

HEARST CORPORATION

v.

LIBERTY MUTUAL INSURANCE COMPANY et al.

Civ. A. Nos. 30647, 31005.

United States District Court
E. D. Pennsylvania.

Dec. 11, 1962.

Harry Lore, Dorfman, Pechner, Sacks & Dorfman, Philadelphia, Pa., for plaintiff.

J. B. H. Carter, Edward W. Madeira, Jr., Philadelphia, Pa., for defendant (Liberty Mutual Insurance Company).

Howard R. Detweiler, Philadelphia, Pa., for third-party plaintiff (Hearst Corporation).

CLARY, Chief Judge.

These cases are presently before the Court on a motion for summary judgment by defendant Liberty Mutual Insurance Company (hereinafter called "Liberty") in Civil Action No. 31005, and a motion to dismiss by Liberty, as third-party defendant, in Civil Action No. 30647. As both actions arise out of the same happening and involve the same questions of law, they were briefed, argued and are here decided, together.

Edward Aaron Mays, an employee of Cuneo Eastern Press, Inc., was injured on or about February 26, 1960 when a large paper roll fell from a lifting device and struck him. Mays commenced Civil Action No. 31005 against Liberty, Cuneo's workmen's compensation insurance carrier, alleging that Liberty had a duty to inspect the work premises and advise Cuneo on safety matters, and that this duty was breached, resulting in Mays' injury. Liberty moved for summary judgment on the theory that it could not be an independent third-party tort feasor because its liability was

that of the employer under the Pennsylvania Workmen's Compensation Act. 77 P.S. § 1 et seq.

Mays also began a separate action against Hearst Corporation, the owner of the paper roll. Hearst joined Liberty as a third-party defendant on the identical theory advanced by Mays in the first action. Liberty moved to dismiss the complaint for failure to state a claim for which relief might be granted.

Both the motion to dismiss and the motion for summary judgment direct the Court toward the same two issues: Whether, as a matter of law, it can be said that Liberty had no duty to see that the area where Mays worked and the manner in which the work was done were safe; and, whether the workmen's compensation insurance carrier can be an independent third-party tort feasor under the Pennsylvania Act.

Mays and Hearst insist that Liberty undertook the obligation to inspect the premises and advise the employer of unsafe conditions, and that under the doctrine of Evans v. Otis Elevator Co., 403 Pa. 13, 168 A.2d 573 (1961) a failure of this obligation creates a cause of action in favor of the injured employee. This undertaking is said to be reflected in the following provision of the contract between Liberty and the employer:

"Inspection and Audit. The company and any rating authority having jurisdiction by law shall each be permitted to inspect the workplaces, machinery and equipment covered by this policy and to examine and audit the insured's books, vouchers, contracts, documents and records of any and every kind at any reasonable time during the policy period and any extension thereof and within three years after termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance."

If this were the sole source of any duty owed by Liberty to Mays, this action could not be maintained. There is nothing within this provision, or any other in the contract, which imposes the least obligation upon Liberty to inspect and advise. At best, this part of the contract grants a license.

But a solution cannot be so simple in light of the entire record. Liberty admitted in answers to interrogatories put to it by Mays in Civil Action No. 31005 that it did undertake some safety inspections of the Cuneo plant. Thus, while there was no contractual obligation, the voluntary undertaking of such a program by Liberty possibly may have created a duty. However, as the facts are not yet sufficiently developed, an ultimate finding on the existence of a duty cannot be made prior to a hearing on the merits. At this point it cannot be said that as a matter of law Liberty had no duty to Mays.

However, even assuming that Liberty has undertaken safety inspections, its sole liability in Civil Action No. 31005 is under the Pennsylvania Workmen's Compensation Act. In making this determination, the Court is faced with a difficult problem of statutory construction upon which there is little or no authority. If the insurance carrier, when conducting safety investigations in the insured's plant, is a "third person" under the Pennsylvania Act, there is no limitation on whatever common law rights an employee may have against it. However, if in these circumstances the carrier is still regarded by the statute as an "employer", or one who has the liability of such, plaintiff is limited to the remedy contained in the Act and that action cannot be maintained.

Neither the Pennsylvania Supreme nor Superior Courts has decided this issue. A similar case was recently dismissed by the Court of Common Pleas of Philadelphia County on defendant's preliminary objection. Roney v. Liberty Mutual Insurance Co., C. P. No. 1, December Term 1961, No. 935. However, the action was dismissed because the allegations in the pleadings were not sufficient to sustain any duty on the part of the carrier. While an interpretation of the statute was not attempted, the Court commented that *all* common law

actions against the carrier were not foreclosed.

The same issue was placed before this Court only a year ago in Bacican v. American Mutual Liability Insurance Co., 29 F.R.D. 133 (E.D.Pa.1961). No decision helpful to the instant case was reached, however, as the Court, in refusing to grant a motion to strike a defense, declined to pass on this question of legislative intent until there had been a hearing on the merits.

These cases have been stimulated by the recent New Hampshire decision of Smith v. American Employers' Insurance Co., 102 N.H. 530, 163 A.2d 564 (1960). There it was held that the New Hampshire Compensation Act does not exclude common law actions against a carrier which conducts monthly safety inspections at the plant, as the carrier is not an employer under the statute. As the decision rests upon the construction of the New Hampshire statute, just as this Court's ruling must rest upon the Pennsylvania statute, then the only present value of *Smith* must come from whatever relevant similarity might exist between the Acts. No such parallel exists. The more brief, less comprehensive New Hampshire legislation cuts into established common law remedies not nearly so deeply as does that of Pennsylvania. In Pennsylvania an employee must elect coverage by the statute at the start of employment and in the absence of election a conclusive presumption is imposed in favor of the statute. The New Hampshire employee is not required to make any prior election, and can choose his remedy even after an injury has been sustained.

Further, the Pennsylvania Act has extensive provisions concerning the position and role of insurance carriers, and requires that employers not being self-insurers, must be insured. The New Hampshire Act makes no mention of insurance, only requiring that those not financially able to bear damages themselves, must post sufficient bond.

Also, in *Smith* the New Hampshire Supreme Court determined that the definition of "employer" under that statute did not include the insurance carrier. This result was reached even though there is no specific definition of "employer" set out in the Act. While the Pennsylvania Courts have often had occasion to define "employer", this Court has found no cases nor have any been cited to it confronting a definition under the present facts.

The Pennsylvania Act states in section 103:

> "The term 'employer,' as used in this act, is declared to be synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it." 1915, June 2, P.L. 736, art. I, § 103; 1937, June 4, P.L. 1552, § 1; 1939, June 21, P.L. 520, § 1; 77 P.S.Pa. § 21 (1952).

The specific language of this section would apparently exclude from the definition of "employer" anything not therein included. But the definition is expanded for certain purposes in section 401:

> "The term 'Employer,' when used in this article, shall mean the employer as defined in article one of this act, or his duly authorized agent, or his insurer if such insurer has assumed the employer's liability, or the fund if the employer be insured therein." 1915, June 2, P.L. 736, art. IV, § 401; 1919, June 26, P.L. 642, § 6; 1937, June 4, P.L. 1552, § 1; 1939, June 21, P.L. 520, § 1; 77 P.S.Pa. § 701 (1952).

Thus, there are at least certain situations when the term "employer" is broader than indicated in section 103 and includes the insurance carrier. While the expanded definition of section 401 applies only to "this article", i. e. the procedural portion of the Act, this has not prevented application of a similar principle throughout the statute. The section, 77

P.S.Pa. § 671, providing for subrogation of the "employer" against negligent third parties to the extent of compensation payable under the Act has always been read so as to give that right of subrogation to the insurance carrier where it has assumed the liability of the employer. Globe Indemnity Co. v. Liberty Mutual Insurance Co., 138 F.2d 180 (3 Cir. 1943); Rehrer v. Service Trucking Co. Inc., 112 F.Supp. 24 (D.C.Del.1953); Neal, to Use of, v. Buffalo, R. & P. Ry. Co., 103 Pa.Super. 218, 158 A. 305 (1931).

The question before this Court is then refined to whether a workmen's compensation carrier who gratuitously undertakes to conduct safety inspections of the employer's premises has assumed the liability of the employer and thus become an "employer" under the Pennsylvania statute.

Mays argues that safety inspections are not mentioned or contemplated by the Act—that they are "non-compensation statute activities"—and, therefore, these activities are subject to common law liability. It is upon this ground that Mays seeks to distinguish the line of cases holding that the carrier's liability for supplying negligent medical care after an accident is limited by the Compensation Act. E. g. Raines v. Pennsylvania Threshermen and Farmers' Mutual Cas. Ins. Co., 385 Pa. 464, 123 A.2d 420 (1956). The Act directs that medical care is to be supplied to an injured employee. Thus, it is reasoned that negligence in supplying that medical care only opens the employer or carrier to liability under the statute. Safety inspections, plaintiff argues, not being ordered or mentioned in the Act, cannot be subjected to the Act's liability limitations.

The distinction plaintiff seeks to draw is illusory. The lack of specific reference to safety inspections does not necessarily make this a "non-compensatory" activity left within the ambit of the common law. It is beyond argument that if an employer conducts negligent safety inspections causing injury to an employee, that employer is liable only under the statute. Further, the employer's insurance carrier, by virtue of the statute and its contract, has assumed this liability.

While the statute does not compel the employer to make inspections, he is nonetheless liable for resulting injuries to employees where he fails to inspect or does so negligently. The statute may not specifically say that inspection is a duty, but the result makes it clear that this is, in fact, a duty which the employer must undertake or be prepared to pay the consequences. It is certainly within the scope of the statute that the insurance company, acting within its functions as carrier, can undertake to assist the employer in the discharge of this duty. Under the Act, the carrier cannot assume any portion of the employer's recognized duty without assuming the corresponding liability. Having assumed a portion of the employer's liability, the carrier stands in the shoes of the employer under the Pennsylvania Act.

To draw a distinction between inspections by the employer and inspections by the insurance carrier would be to refine the Act to a legalistic sophistication not found in either the words of the statute or its underlying policy. Better and safer conditions for workmen and adequate compensation for injuries are the sort of things with which the statute is most certainly concerned. A safety program conducted by the insurance carrier works to complement these statutory aims. A decreased accident rate may result in decreased costs, but more importantly, makes the employee more secure in his physical well-being. If this Court were to find that the Legislature excluded such a program from the scope of the Pennsylvania Workmen's Compensation Act, the purpose of the Act unfortunately would be hampered. This being so, plaintiff's sole remedy as against the employer or its insurance carrier is under the terms of that Act.

However, there are other considerations which must govern the third-party complaint of Hearst against Lib-

erty. Even though Liberty's liability is limited by the Compensation Act, it might conceivably be liable to Hearst for contribution as a negligent joint tort feasor if Hearst can prove the alleged duty and negligence. To dismiss Hearst's complaint would be to destroy its statutory rights of contribution. Maio v. Fahs, 339 Pa. 180, 114 A.2d 105 (1940).

Defendant's motion for summary judgment in Civil Action No. 31005 will be granted and the motion to dismiss the third-party complaint in Civil Action No. 30647 will be denied.