Edward Aaron MAYS, Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY.

No. 14323.

United States Court of Appeals Third Circuit.

Argued June 18, 1963.

Decided Aug. 28, 1963.

Rehearing Denied Oct. 7, 1963.

Harry Lore, Dorfman, Pechner, Sacks & Dorfman, Philadelphia, Pa., for appellant.

Edward W. Madeira, Jr., Philadelphia, Pa. (J. B. H. Carter, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and STALEY and FORMAN, Circuit Judges.

STALEY, Circuit Judge.

Plaintiff Edward Aaron Mays instituted this diversity action against Liberty Mutual Insurance Company, the insurance carrier of his employer, alleging that the latter's negligence in failing to properly inspect the employer's premises caused injury to him. The question presented is whether the suit is barred by the Pennsylvania Workmen's Compensation Act. 77 Purdon's Pa.Stat.Ann. §§ 1–1025. The district court concluded that the insurer was an "employer" within the meaning of the Act, and granted defendant's motion for summary judgment. 211 F.Supp. 541 (E.D.Pa.1962).

The complaint avers that, while in the employ of Cuneo Eastern Press, Inc., Mays was injured when a paper roll "suddenly came loose from the 'mansaver device' being used to transport it in the warehouse of the plaintiff's employer, and from its own external protective wrapping, and the said paper roll did then and there strike the paper rolls on which the plaintiff was standing in order to do his work, forcing the plaintiff to fall to the floor and subsequently, the above said paper roll did fall on the plaintiff." Extensive injuries are alleged. The theory of the case was that pursuant to its policy of Workmen's Compensation and Employers' Liability Insurance, defendant had a duty to inspect the work places, machinery, and equipment of the employer, and to advise and make recommendations concerning the existence of any "unsafe, hazardous, dangerous, and negligent conditions." The complaint further alleged that breach of that duty caused the accident.

While rejecting this interpretation of the contract of insurance, the district court observed:

"* * * Liberty admitted in answers to interrogatories put to it by

Mays in Civil Action No. 31005 that it did undertake some safety inspections of the Cuneo plant. Thus, while there was no contractual obligation, the voluntary undertaking of such a program by Liberty possibly may have created a duty. However, as the facts are not yet sufficiently developed, an ultimate finding on the existence of a duty cannot be made prior to a hearing on the merits. At this point it cannot be said that as a matter of law Liberty had no duty to Mays." 211 F.Supp. at 542.

Since there is a genuine issue of material fact on the question of an enforceable duty,[1] and as the district court's decision was premised solely on its construction of the Pennsylvania Workmen's Compensation Act, the correctness of that construction is the only question we decide on this appeal.

The appellate courts of Pennsylvania have not passed upon the question. The problem, though novel, is wholly one of statutory construction. More particularly, as we have previously stated, it is refined to the question of whether the insurance carrier is an "employer" as that term is defined in the statute. Accordingly, we start with that definition:

"§ 21. 'Employer' defined

"The term 'employer,' as used in this act, *is declared to be synonymous with master*,[2] and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it." (Emphasis

supplied.) 77 Purdon's Pa.Stat.Ann. § 21.

It is not contended that Liberty is in any sense the master of Mays, and, thus, as the district court observed, "The specific language of this section would apparently exclude from the definition of 'employer' anything not therein included." However, the court was impressed with the expanded definition of the term found in Article IV, § 401 of the Act, and with the subrogation rights of insurance carriers. The relevant portion of § 401 provides:

"The term 'Employer,' *when used in this article*, shall mean the employer as defined in article one of this act, or his duly authorized agent, or his insurer if such insurer has assumed the employer's liability, or the fund if the employer be insured therein." (Emphasis supplied.) 77 Purdon's Pa.Stat.Ann. § 701.

The district court reasoned that, "[u]nder the Act, the carrier cannot assume any portion of the employer's recognized duty without assuming the corresponding liability. Having assumed a portion of the employer's liability, the carrier stands in the shoes of the employer under the Pennsylvania Act." 211 F.Supp. at 544.

■■ But the legislature has defined the term "employer" in words which are clear and free from all ambiguity. The mandate of the Pennsylvania Statutory Construction Act requires adherence to that definition.[3] Nor is this legislative command made inapplicable by the definition contained in Article IV, § 401 of the Workmen's Compensation Act. Article IV relates solely to procedure, and § 401

---

1. Because of this factual issue, we cannot accept Liberty's argument that, as a matter of law, it owed no enforceable duty to Mays.

2. Conversely, the statute defines "employee" as being synonymous with servant. 77 Purdon's Pa.Stat.Ann. § 22.

3. "§ 551. Construction of laws; legislative intent controls

"The object of all interpretation and construction of laws is to ascertain and

effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. * * *" 46 Purdon's Pa.Stat.Ann. § 551.

specifically states that the definition therein contained applies only "when used in this article." Since the Act contemplates a system of compensation insurance, it is perfectly reasonable that the employer's insurance carrier, which pays the injured employee, be given the same procedural rights as the insured employer. Of course, the reference in § 401 to an insurer who "has assumed the employer's liability" means the liability to pay compensation to the injured employee, for under the Act that is the extent of the employer's liability. From this it is clear that, rather than expanding the principal definition of "employer", § 401 serves only this limited purpose. In this respect the definition in that section supports the position of Mays, for when the legislature intended to equate the insurer with the employer, it did so specifically in unequivocal terms. Its failure to do so in the clear, unambiguous definition found in § 103, 77 Purdon's Pa.Stat.Ann. § 21, is an indication that it did not intend to blend their jural personalities.

■■ It is beyond dispute that the Act affects only the legal relations between employer and employee and does not purport to alter the employee's rights against third parties. On the contrary, the statute acknowledges the viability of those rights. 77 Purdon's Pa.Stat.Ann. § 671. Thus, insofar as the employment relationship is concerned, the statute must be liberally construed in order to effectuate its remedial purpose, but its scope cannot be extended in a manner which would destroy either the employee's common-law rights against third persons, or the common-law conception of third persons. Zimmer v. Casey, 296 Pa. 529, 146 A. 130 (1929). The essence, indeed the very legislative definition, of the employer-employee status is the master-servant relationship. As the Pennsylvania Supreme Court held in Zimmer, 146 A. at 131, "The act does not affect the existing common-law right to sue the wrongdoer, unless that wrongdoer is the master." The master-servant relationship is totally lacking in the matter sub

judice. Hence, to hold that Liberty is the employer of Mays within the meaning of the Act would not only be to abrogate by judicial legislation the employee's common-law rights, but would directly contravene the intent of the legislature as manifested in the statute.

We conclude therefore that this suit is not barred by the Pennsylvania Workmen's Compensation Act. That conclusion is in accord with the decisions of the few appellate courts which have considered the problem under similar statutes. Fabricius v. Montgomery Elevator Co., 121 N.W.2d 361 (Iowa, 1963); Smith v. American Employers' Insurance Co., 102 N.H. 530, 163 A.2d 564 (1960). Although the holding in the latter case was followed by an amendment of the New Hampshire legislature equating the insurance carrier with the employer, this is certainly no indication that the two were intended to be merged under the prior statute. Fabricius v. Montgomery Elevator Co., 121 N.W.2d at 365. Although it does not decide the precise issue posed by the case at bar, our holding in Waldron v. Aetna Casualty & Surety Co., 141 F.2d 230 (C.A.3, 1944), supports our decision here.

Liberty cites Nelson v. Union Wire Rope Corp., 39 Ill.App.2d 73, 187 N.E.2d 425 (1963). But that decision was premised on the legal conclusion that the insurer owed no enforceable duty to the injured employees, 187 N.E.2d at 453, a question expressly left open by the district court in the instant case pending a hearing on the merits. The subsequent language of the court in Nelson, 187 N.E.2d at 453, equating the insurer with the employer, is dicta, and insofar as it may be considered decisional, we reject it. The same observations apply to the unreported decision of the Philadelphia Common Pleas Court in Roney v. Liberty Mutual Insurance Co. (C.P. No. 1, July 20, 1962). Liberty's reliance on the two Raines cases of the Pennsylvania Supreme Court, Raines v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co., 385 Pa. 464, 123 A.2d 420 (1956), and 391 Pa. 175, 137 A.2d

257 (1958), is likewise misplaced. Those decisions also turned upon the absence of an enforceable duty; indeed, the court assumed, arguendo, that the insurer's identity was not merged with that of the employer. 123 A.2d at 421.

[5] Liberty argues that permitting this suit will result in the insurance carrier being subrogated to a right of action against itself. The answer is that the insurer would have a setoff to the extent of the compensation paid. Fabricius v. Montgomery Elevator Co., 121 N.W.2d at 365.

The insurer's final argument is based on what it terms "pressing considerations of public policy." It is urged that our determination will cause insurance companies to refrain from making safety inspections, and that the "ultimate losers will be workmen and their families" because of an increase in the incidence and severity of industrial accidents. There can be no doubt of the value of a safety program. This, however, is not to say that insurance carriers are motivated solely by altruism or derive no financial benefit from a safety inspection policy. It is obvious that the cost of workmen's compensation becomes less and less expensive as more and better safety methods are devised and put into operation. We point this out not to suggest that the insurer has a duty to inspect, but simply to show that a policy of inspection has practical advantages for the insurer, as well as for the employer and his workmen. We think the following excerpt from Fabricius, 121 N.W.2d at 366, is particularly apposite to the case at bar:

"Defendant strongly urges what it calls practical effects and sound public policy. It suggests curtailment of inspections by insurers and discontinuing by insurers of writing workmen's compensation insurance in Iowa. Plaintiff's answer is, no inspection is better than a negligent one. We are inclined to agree. We rather doubt that all insurers will leave the field. Defendant further invites us into the field of legis-

lative intent and sound public policy on the broad basis of the entire act and what to it are unusual and inequitable situations. In this regard it is the policy of this court not to interpret a statute as depriving one of a common law right unless the statute clearly so states [citing cases]. The power to deprive one of a common law action is vested in the legislature under its police power upon declared public policy of the state when circumstances and conditions warrant such action. In this regard the rejection feature of the compensation act should be noted."

The logic of this explication is unassailable.

The judgment of the district court will be reversed and the cause remanded for further proceedings in conformity with this opinion.