## Adcox v. Pennsylvania Manufacturers' Association Casualty Insurance Company

180

*Harry Lore*, and *Dorfman, Pechner, Sacks & Dorfman*, for plaintiff.

*Joseph H. Foster*, and *White & Williams*, for defendant.

GOLD, P. J., August 24, 1964.—Herman Adcox, plaintiff, instituted this action in trespass against defendant, Pennsylvania Manufacturers' Association Casualty Insurance Company, the compensation carrier of Masland Duraleather Company, employer of plaintiff, for personal injuries sustained on October 17, 1961, during the course of his employment. On that date, plaintiff's left hand was caught in the rollers of a lamination machine. The consequent injuries required amputation of plaintiff's left forearm.

This matter is before the court on preliminary objections in the nature of a demurrer to plaintiff's amended complaint. This is the second time preliminary objections have been filed. The original preliminary objections were heard by Judge Alexander who sustained them and granted plaintiff leave to file an amended complaint.

The original complaint alleged that under a policy of insurance entered into between defendant and plaintiff's employer, "it became and was the duty of the defendant to inspect the workplaces, machinery and equipment used by the plaintiff's employer . . . and to advise, counsel and recommend to the plaintiff's employer the existence of all unsafe, hazardous, dangerous and negligent conditions obtaining at and about

the said workplaces, equipment and machinery used by the plaintiff's employer": Paragraph 5 of complaint.[1] The complaint set out that defendant conducted a safety engineering department for the purpose of complying with such duty, and specified certain acts and omissions to act as constituting the alleged negligence of the defendant.

Judge Alexander sustained the original preliminary objections on the ground that the quoted provision in the insurance contract did not, as claimed in the complaint, create any duty on defendant to examine or inspect the equipment and machinery of the employer. Judge Alexander held that the agreement merely granted a license to defendant to inspect and did not impose a duty on defendant so to do. He granted leave to plaintiff to amend the complaint because defendant's answers to interrogatories disclosed that defendant had made surveys or inspections of the employer's plant. Judge Alexander concluded that this information "when further explored might establish a right of action in favor of the plaintiff and against the defendant based upon the defendant's assumption of the responsibility to conduct safety surveys of the plant of plaintiff's employer".

The amended complaint differs from the original complaint in a number of particulars. It again alleges the duty to inspect the machinery and equipment of plaintiff's employer and that such duty arose from

---

[1] The complaint alleged such duty arose out of this provision of the insurance contract:

"3. *Inspection and Audit:* The company and any rating authority having jurisdiction by law shall each be permitted to inspect the workplaces, machinery and equipment covered by this policy and to examine and audit the insured's books, vouchers, contracts, documents and records of any and every kind at any reasonable time during the policy period and any extension thereof and within three years after termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance."

the insurance contract. However, four paragraphs have been added in which it is averred that from 1955 up to the time of the accident the defendant made surveys of the employer's equipment and machinery on an average of once every three months; that the last inspection prior to the accident was made on August 23, 1961; that such surveys and inspections were made for the purpose of ascertaining hazardous conditions and submitting recommendations to eliminate such hazards; that each survey or inspection lasted approximately a half day and that the surveys and inspections included 'within their ambit and orbit . . . the lamination machine on which plaintiff sustained his injuries". In the amended complaint, 14 acts and omissions to act are averred in the paragraph particularizing the alleged negligence of defendant as compared with nine acts and omissions averred in the original complaint.

The preliminary objections filed to the amended complaint are identical with the objections filed to the original complaint.

The precise issues to be determined here are: First, whether there was a duty of investigation and inspection incurred by the insurance carrier under the policy, and, if so, whether the duty was breached; and second, in the absence of any duty incurred by defendant, whether the complaint avers a cause of action on the theory that having assumed the responsibility of making investigations and inspections, in the absence of any contractual obligation so to do, it is responsible for negligent performance of this undertaking, and, third, whether plaintiff's remedy is restricted to the jurisdiction of The Workmen's Compensation Act.

As to the first question, it is our considered judgment that no duty was incurred by defendant under the insurance policy, and that under the inspection and audit provision of such policy, a license was granted

to defendant to inspect the employer's premises which did not impose any duty on defendant so to do. It necessarily follows that where no duty exists, there can be no breach of such duty.

As to the second question, this case requires a reexamination of fundamentals. Before a party may recover in a negligence action, he must allege the existence of a duty owed to him and a breach thereof: Stevens v. Reading Street Railway Co., 384 Pa. 390 (1956); Zayc v. John Hancock Mutual Life Insurance Company of Boston, 388 Pa. 426 (1940). This rule was affirmed recently in Peatross v. Southwark Minit-Man Corp., 415 Pa. 129, opinion by Justice Roberts, filed July 1, 1964. In Peatross, the plaintiff-employe at a car wash installation was injured when one of the automobiles being washed lurched forward and struck him. He sued his employer for failure to ascertain the ownership and keep record of the identification of the allegedly defective automobile which struck him. The court held that the complaint failed to allege any duty owing from the employer to the employe and, therefore, judgment on the pleadings had been properly entered for the employer.

We now direct our attention to the gravamen of this case, viz., is the compensation carrier responsible for negligent performance of a voluntary undertaking to make safety inspections of the employer's equipment?

The question of an enforceable duty in this type of case has been considered in Pennsylvania. It was denied by Judge Ullman in an unreported opinion in Roney v. Liberty Mutual Insurance Co., C. P. No. 1, December term 1961, no. 935, where plaintiff-employe sued the employer's compensation carrier for improper inspections.

Mays v. Liberty Mutual Insurance Company, 323 F. 2d 174 (3rd Cir., 1963), supports the view of the plain-

tiff. In Mays, as here, the claim was based on a failure of an alleged inspection duty by the compensation carrier, which duty allegedly arose out of a contract of insurance between the carrier and employer. In the lower court opinion (211 F. Supp. 541), Judge Clary stated that the voluntary undertaking of such an inspection program by the insurance carrier may have created a duty. Although Judge Clary did not state the nature of the duty that may have been created and did not state any authority to support his suggestion that a duty may have been created, the context of his suggestion indicates a reference to the duty to perform such inspections in a nonnegligent manner. However, Judge Clary did decide that the insurance carrier was an "employer" within the meaning of the Pennsylvania Workmen's Compensation Act, 77 PS §§1-1025, thus negating plaintiff's trespass action.

The court of appeals reversed Judge Clary, but only on the second proposition, holding that the insurance carrier was not an "employer" within the meaning of the Pennsylvania Workmen's Compensation Act. The court of appeals agreed with Judge Clary that ". . . an ultimate finding on the existence of a duty cannot be made prior to a hearing on the merits. At this point, it cannot be said that as a matter of law Liberty had no duty to Mays. 211 F. Supp. at 542": 323 F. 2d 176.

The foremost and most recent authority on this controversial subject is Nelson v. Union Wire Rope Corp., 39 Ill. App. 2d 73, 187 N. E. 2d 425 (1963); reversed on appeal, 31 Ill. 2d 69, 199 N. E. 2d 769 (1964). There, the Supreme Court of Illinois, on facts strikingly similar to the instant case, held that a verdict against the compensation carrier should be affirmed. The Nelson case, since it considered and disposed of all the issues raised by the preliminary objections in the instant case, merits our attention and consideration.

In Nelson, a number of plaintiffs sued for personal injuries and deaths which were occasioned in Florida when a temporary construction hoist on a construction site plunged six floors with 19 men aboard. Actions were brought against the manufacturer of the hoist cable (Union Wire Rope Company), the manufacturer of the hoist (Archer Iron Works), the general contractor (Auchter), and the workmen's compensation and public liability carrier for the general contractor (American Mutual Liability Insurance Co.). After trial, the insurance carrier was found guilty of negligence and assessed substantial damages. On appeal, the judgment against the insurance carrier was reversed. The Supreme Court of Illinois permitted further appeal and granted leave to a number of insurance groups to file briefs amici curiae. The Illinois Supreme Court reversed the Appellate Court of Illinois, First District, First Division, and reinstated the judgment against the insurance carrier.

The court stated the basis of plaintiffs' claims as follows:

"The substance of plaintiffs' complaint against American Mutual . . . and the theory . . . consistently adhered to, is that the insurance company had gratuitously undertaken to make safety inspections of the practices and equipment of Auchter, its insured, and had carelessly and negligently performed the said inspections, as the proximate result of which plaintiffs were injured and killed": 31 Ill. 2d 72, 199 N. E. 2d 773.

Defendant denied the allegations and set forth affirmative defenses, including the defense that as the general contractor's compensation carrier it was not subject to suit as a third-party tortfeasor under the Florida Workmen's Compensation Act. It will be noted that two of the three issues considered in Nelson are the two principal issues confronting us in the instant

case. In Nelson, those two issues were stated as follows:

". . . first, was a valid common-law action proved against defendant . . . second, were plaintiffs' causes of action against defendant taken from them by the Florida Workmen's Compensation Act. . . .": 31 Ill. 2d 74, 199 N. E. 2d 773.

In Nelson, the court made an exhaustive survey and analysis of the law pertaining to an insurance carrier's liability where it voluntarily assumed duties normally undertaken by a plaintiff's employer. What the court said bears repeating because of its application to the instant case:

". . . we think it well to examine the legal foundation upon which plaintiffs' actions are based. Originating with the decision of Coggs v. Bernard, 2 Lord Raymond 909, it has come to be a recognized principle that liability can arise from the negligent performance of a voluntary undertaking. In our times a clear and oft-cited statement of the principle is the language of Justice Cardozo in Glanzer v. Shepard, 233 N. Y. 236, 135 N. E. 275, 276 . . . when he said: 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all' . . . the views of the Restatement of Torts . . . is stated in this manner: '(1) One who gratuitously renders services to another, . . . is subject to liability for bodily harm caused to the other by his failure, while so doing, to exercise such competence and skill as he possesses.' §323(1)": 31 Ill. 2d 74, 199 N. E. 2d 773-74.

There is other respectable authority holding that gratuitous inspections by insurers may be made under such circumstances as to create an enforceable duty to persons known and unknown. Two of the most recent authorities are Smith v. American Employers' Insurance Co., 102 N. H. 530, 163 A. 2d 564 (1960), and

Fabricius v. Montgomery Elevator Co., 254 Iowa 1319, 121 N. W. 2d 361 (1963). To like effect are Hartford Steam Boiler Inspection & Insurance Co. v. Pabst Brewing Co., 201 F. 617 (7th Cir.); Van Winkle v. American Steam Boiler Co., 52 N. J. L. 240, 19 Atl. 472 (1890); Sheridan v. Aetna Casualty & Surety Co., 3 Wash. 2d 423, 100 P. 2d 1024 (1940).

In Raines v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company, 385 Pa. 464 (1956), and 391 Pa. 175 (1958), plaintiff received a leg injury at work. Despite treatment, it was necessary to amputate the leg. Plaintiff sued his employer's insurance carrier on the ground that the loss of the leg and the aggravation of other injuries were caused by the failure of the insurance carrier to furnish him with competent and adequate medical care allegedly promised to him by the carrier's representative. Preliminary objections to the complaint were sustained by the Supreme Court. The court held that ". . . the appellant pleads the defendant's breach of a gratuitous promise, and nothing more. He does not plead a single fact from which could be derived a finding of negligence on the part of the insurance company that was the proximate cause of the aggravation of appellant's injury": 385 Pa. 467.

The two Raines decisions can be and should be differentiated on the pleadings. In Raines, plaintiff did not specify the negligence necessary to impose liability upon the compensation carrier. In our case, the acts of negligence are specifically and fully set forth and can be relied upon to sustain the breach of the gratuitous undertaking.[2]

There is nothing in the Raines cases as we read

---

[2] In our judgment, plaintiff should have pleaded his cause in the alternate: (1) The contractual duty to inspect without negligence, and (2) the negligent inspections of defendant without any contractual obligation so to do.

them which runs contra to the law as enunciated in Nelson and Fabricius, viz., that where one assumes to act and acts, even though gratuitously, he becomes subject to the duty of acting in a nonnegligent way.

In Roney, where plaintiff received injuries during the course of his employment, Judge Ullman stated that the action against the insurance carrier was ". . . on the theory that the insurance carrier held itself out as undertaking to carry on a program designed to promote safety and minimize accidents, and that it negligently failed to carry out such a program." Judge Ullman concluded that plaintiff's complaint failed to state a cause of action because it "states merely that defendant insurance company 'presented itself in advertisements . . . that it engaged in a loss prevention service which provided technically trained experts in safety work . . . would undertake to advise its policyholders what areas need attention with regard to safety and it would make sound, practical recommendations for improvement . . .', that plaintiff's employer was a policyholder of defendant and that defendant failed to adhere to, comply with, and/or carry out the obligations which it had undertaken, and that while plaintiff was working, 'a piece of lumber did fall onto and upon the person of the plaintiff, striking him on the back and causing him to fall upon the ground.' "

On the negligence aspect of the case, as distinguished from the contention that the workmen's compensation law provided the exclusive remedy to plaintiff, Judge Ullman relied squarely on Raines for his disposition of the Roney case.

But Raines does not take issue with the doctrine that where a person gratuitously assumes an obligation, and enters upon its undertaking, the law requires such person to carry out that obligation with due care. Indeed there are Pennsylvania cases wherein the Supreme Court has indicated that it subscribes to

such doctrine. One of such cases was Bollin v. Elevator Construction & Repair Co., Inc., 361 Pa. 7 (1949). There, plaintiff was injured during the course of his employment when an elevator in which he was riding fell in its shaft. Plaintiff sued the elevator company which had contracted with his employer to repair the elevator and "restore it to proper and safe operating condition". The elevator company joined the insurance carrier of the employer as a defendant on the ground that the carrier had insured the employer against loss from elevator accidents and had undertaken to make periodic inspections of the elevator. The elevator company alleged the carrier had failed to perform the duty undertaken and had permitted the elevator to be operated while in a state of disrepair and defective condition. In Bollin, Chief Justice Maxey stated the question for decision as follows:

". . . what is the legal liability of an insurance company by reason of its having assumed on behalf of the owner to discharge the statutory liability of inspecting and reporting on the condition of the elevator, not within the terms of its contract, but under and pursuant to the terms of a statute?": 361 Pa. 12.

Justice Maxey also quoted Judge Cardozo in Mac-Pherson v. Buick Motor Company, 217 N. Y. 382, 111 N. E. 1050, who said:

"We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. *We have put the source of the obligation where it ought to be. We have put the source in the law*": 361 Pa. 17. (Italics furnished)

Relying on the Cardozo principle, Justice Maxey concluded as follows:

"We think the foregoing reasoning of Judge Cardozo applies to the instant case . . . The source of this obligation is not only the contract between the Penn-

sylvania Company and the Indemnity Company; it finds 'its source' also 'in the law'.

"What we said in Ebbert v. Philadelphia Electric Company, 330 Pa. 257, 269, 198 A. 323, is applicable here, to wit: 'The test to determine whether there is liability in an action of tort is in the answer to the question whether the defendant by an act of omission injured another by disregarding a duty imposed by law in respect to that other' ": 361 Pa. 17, 18.

In 1937 in the case of Harris v. Lewistown Trust Company, 326 Pa. 145, the Supreme Court stated clearly that this same doctrine was applicable in the landlord and tenant law. In Harris, referring to Zimmerman v. Homer Building and Loan Association, 111 Pa. Superior Ct. 345 (1934), the Supreme Court said:

"That was an action in trespass to recover for personal injuries. The testimony there disclosed that defendant had promised to repair and had done so negligently. There can be no doubt that a landlord undertaking to repair the premises leased, and repairing them negligently, thereby causing injury, is liable for his tort: Tarnogurski v. Rzepski, 252 Pa. 507; Rehder v. Miller, 35 Pa. Superior Ct., 344; Gill v. Middleton, 105 Mass. 477; Gregor v. Cady, 82 Me. 131; Rowan v. Amoskeag Mfg. Co., 79 N.H. 409; Marks v. Nambil Realty Co., 245 N.Y. 256; Smith v. Tucker, 151 Tenn. 347. *This is so even though the undertaking was gratuitous since the root of the liability imposed is not the undertaking or promise but the making of the repairs in such a way as to create an unreasonable risk of harm to those in plaintiff's position*": 326 Pa. 148 (Italics supplied.)

There is abundant authority to support the proposition that the landlord will be held liable for negligence in making repairs where the undertaking was assumed gratuitously: Tarnogurski v. Rzepski, supra; Theakston v. Kaszak, 152 Pa. Superior Ct. 576 (1943); Lasch v. Cohn, 130 Pa. Superior Ct. 161 (1938); and

most recently, Remmel v. Gallagher, 190 Pa. Superior Ct. 100 (1959).

Although the element of contractual obligation is not present nor involved in our case, what Justice Jones said in Evans v. Otis Elevator Company, 403 Pa. 13 (1961), bears repeating in affirming the doctrine that because of the nature of certain undertakings the law imposes a duty regarding them. Justice Jones expressed it in this language:

". . . a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby; Prosser, Torts (2nd ed. 1955), sec. 85, pp. 514-519. It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract. If a person undertakes by contract to make periodic examinations and inspections of equipment, such as elevators, he should reasonably foresee that a normal and natural result of his failure to properly perform such undertaking might result in injury not only to the owner of the equipment but also third persons, including the owner's employees: Bollin v. Elevator Construction and Repair Co., 361 Pa. 7, 17, 18, 63 A.2d 19, and cases therein cited. The orbit of Otis' duty to third persons is measured by the nature and scope of his contractual undertaking with Sperling and, if, as presently appears, Otis undertook to inspect the elevator at regular intervals, and, if the elevator was in a defective or dangerous condition discoverable by reasonable inspection, *Otis would be liable to third persons, regardless of any privity of contract,* who might be injured by Otis' failure to properly perform its contractual undertaking of inspection": 403 Pa. 18, 19. (Italics supplied.)

In March 1964 in Doyle v. South Pittsburgh Water

Company, 414 Pa. 199, the Supreme Court incorporated the aforequoted language from Evans in its decision and repeated Judge Cardozo's language emphasizing that the source of certain obligations is the law and not merely contractual relations created by the parties.

The doctrine espoused by Nelson is, therefore, not new to Pennsylvania law, and Pennsylvania can be counted among the jurisdictions subscribing to the doctrine that gratuitous inspections by insurers may be made under such circumstances as to create an enforceable duty to persons known and unknown.

The amended complaint in the instant case was submitted following Judge Alexander's observation that further exploration of information in the original complaint and interrogatories "might establish a right of action in favor of the plaintiff and against the defendant based upon the defendant's assumption of responsibility to conduct safety surveys of the plant of plaintiff's employer". A review of the amended complaint satisfies us that it predicates liability of defendant upon such assumption of responsibility. Since the preliminary objections filed are in the nature of a demurrer, every material and relevant fact well pleaded in the complaint, *and every inference fairly deducible therefrom,* are to be taken as true: Kutsenkow v. Kutsenkow, 414 Pa. 610 (1964). The amended complaint repeats paragraphs 4 and 5 of the original complaint, which refer to the provision in the insurance contract regarding inspection of the workplaces, machinery and equipment of the employer. While it is possible to interpret this paragraph, standing alone, as basing plaintiff's right of action on a duty of defendant arising out of the contract, it is also possible to interpret it, in conjunction with the rest of the complaint, as a prefatory paragraph to explain the circumstances under which the insurance carrier assumed the respon-

sibility of conducting safety surveys in the plant of plaintiff's employer, and we so interpret it. Paragraphs 6 through 9 of the amended complaint spell out sufficiently the manner in which defendant allegedly assumed the responsibility of inspection, and paragraph 11 enumerates the items of negligence, acts of malfeasance and acts of nonfeasance, attributed to defendant. Taken in its entirety, we interpret the amended complaint as alleging that defendant assumed the responsibility of making safety inspections of the workplaces, machinery and equipment of plaintiff's employer, and that such inspections were planned, periodic and were directed, inter alia, to the safety of the plant's employes, including plaintiff. We, therefore, hold that the amended complaint sets forth a cause of action by alleging an enforceable duty to plaintiff arising out of defendant's voluntary assumption of responsibility to make safety inspections in the employer's establishment.

On the issue whether defendant is an "employer" within the meaning of The Pennsylvania Workmen's Compensation Act, 77 PS §§ 1—1025, we are in agreement with the court of appeals of this circuit, and we adopt the reasoning of Judge Staley as expressed in the following quotation from the Mays case:

"The appellate courts of Pennsylvania have not passed upon the question. The problem, though novel, is wholly one of statutory construction. More particularly, as we have previously stated, it is refined to the question of whether the insurance carrier is an 'employer' as that term is defined in the statute. Accordingly, we start with that definition:

" 'Sec. 21. "Employer" defined.

" 'The term "employer," as used in this act, *is declared to be synonymous with master*, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit,

municipal corporations, the Commonwealth, and all governmental agencies created by it. (Emphasis supplied.) 77 Purdon's Pa. Stat. Ann. Sec. 21.'

"It is not contended that Liberty is in any sense the master of Mays, and, thus, as the district court observed, 'The specific language of this section would apparently exclude from the definition of "employer" anything not therein included.' However, the court was impressed with the expanded definition of the term found in Article IV, Sec. 401 of the Act, and with the subrogation rights of insurance carriers. The relevant portion of Sec. 401 provides:

" 'The term "Employer", *when used in this article,* shall mean the employer as defined in article one of this act, or his duly authorized agent, or his insurer if such insurer has assumed the employer's liability, or the fund if the employer be insured therein. (Emphasis supplied.) 77 Purdon's Pa. Stat. Ann. Sec. 701.'

"The district court reasoned that, 'under the Act, the carrier cannot assume any portion of the employer's recognized duty without assuming the corresponding liability. Having assumed a portion of the employer's liability, the carrier stands in the shoes of the employer under the Pennsylvania Act.' 211 F. Supp. at 544.

"But the legislature has defined the term 'employer' in words which are clear and free from all ambiguity. The mandate of the Pennsylvania Statutory Construction Act requires adherence to that definition. Nor is this legislative command made inapplicable by the definition contained in Article IV, Sec. 401 of the Workmen's Compensation Act. Article IV relates solely to procedure, and Sec. 401 specifically states that the definition therein contained applies only 'when used in this article.' Since the Act contemplates a system of compensation insurance, it is perfectly reasonable that the employe's insurance carrier, which pays

the injured employee, be given the same procedural rights as the insured employer. Of course, the reference in Sec. 401 to an insurer who 'has assumed the employer's liability' means the liability to pay compensation to the injured employee, for under the Act that is the extent of the employer's liability. From this it is clear that, rather than expanding the principal definition of 'employer', Sec. 401 serves only this limited purpose. In this respect the definition in that section supports the position of Mays, for when the legislature intended to equate the insurer with the employer, it did so specifically in unequivocal terms. Its failure to do so in the clear, unambiguous definition found in Sec. 103, 77 Purdon's Pa. Stat. Ann. Sec. 21, is an indication that it did not intend to blend their jural personalities.

"It is beyond dispute that the Act affects only the legal relations between employer and employee and does not purport to alter the employe's rights against third parties. On the contrary, the statute acknowledges the viability of those rights. 77 Purdon's Pa. Stat. Ann. Sec. 671. Thus, insofar as the employment relationship is concerned, the statute must be liberally construed in order to effectuate its remedial purpose, but its scope cannot be extended in a manner which would destroy either the employee's common-law rights against third persons, or the common-law conception of third persons. Zimmer v. Casey, 296 Pa. 529, 146 Atl. 130 (1929). The essence, indeed the very legislative definition, of the employer-employee status is the master-servant relationship. As the Pennsylvania Supreme Court held in Zimmer, 146 Atl. at 131, 'The act does not affect the existing common-law right to sue the wrongdoer, unless that wrongdoer is the master.' The master-servant relationship is totally lacking in the matter sub judice. Hence, to hold that Liberty is the employer of Mays within the meaning of the Act

would not only be to abrogate by judicial legislation the employee's common-law rights, but would directly contravene the intent of the legislature as manifested in the statute": 323 F. 2d 176, 177 (Footnotes excluded from quote).

Moreover, it is important to note that both in Nelson and Fabricius the same result was reached in the construction of workmen's compensation acts wherein the pertinent statutory language is practically identical with the language and wording of the applicable section of the Pennsylvania Workmen's Compensation Act, sec. 401.

It is likewise noteworthy that in the first Raines appeal, our Supreme Court did not decide this issue, although it was squarely presented for determination. The following quotation has significance:

"Conceding, *arguendo*, the appellant's point that although Section 401 of the Workmen's Compensation Act defines an employer as, inter alia, the employer's insurer, the latter's identity is not so merged with the employer's as to relieve the insurer from liability to the injured employee for an independent tort done him by the insurer": 385 Pa. 465, 466.

And we further point out that in both Raines appeals, our Supreme Court stated that the ". . . [compensation] company's *sole liability* to the appellant (to provide medical services) is under its policy of compensation insurance which it issued to the appellant's employer": 385 Pa. 467 and 391 Pa. 176, 177. (Matter within parentheses supplied.)

Here, as we have categorically stated, defendant's liability is noncontractual and is predicated upon a farther reaching doctrine of law.

We have the highest regard for the scholarship of our learned colleague, Judge Ullman, and it is with regret that we must disagree with his decision in Roney.

We, therefore, conclude in the instant case that defendant was not the "employer" of plaintiff within the definition of that term in The Workmen's Compensation Act, and that the action is not barred by the Pennsylvania Workmen's Compensation Act.

As we have indicated, for the purpose of considering the preliminary objections in the form of a demurrer, all well-pleaded facts in the complaint must be accepted as true. Since plaintiff has pleaded what, if proved, would entitle him to an award of damages against defendant, we hold he must be granted the opportunity to prove his allegations: Kutsenkow v. Kutsenkow, 414 Pa. 610, 613 (1964).

For the foregoing reasons, the preliminary objections to the amended complaint are dismissed.